Filing # 99143664 E-Filed 11/19/2019 05:54:26 PM

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

SANFORD AIRPORT AUTHORITY,    )
                        )
       Plaintiff,            )
                        )
vs.                        )
                        )
3M COMPANY, E. I. DUPONT DE    )
NEMOURS AND COMPANY, THE    )
CHEMOURS COMPANY LLC,    )    CASE NO. 2019-CA-003509-10-W
DOWDUPONT, INC., DUPONT    )
CHEMICAL SOLUTIONS ENTERPRISE,  )    DIVISION: _____
THE CHEMOURS COMPANY FC, LLC,  )
CHEMGUARD, INC., TYCO FIRE    )
PRODUCTS LP, THE ANSUL    )
COMPANY, JOHNSON CONTROLS    )
INTERNATIONAL, PLC,    )
KIDDE-FENWAL, INC.,    )
KIDDE PLC, INC., KIDDE FIRE    )
FIGHTING, INC., UTC FIRE &    )
SECURITY AMERICAS CORPORATION,  )
NATIONAL FOAM, INC., ANGUS    )
INTERNATIONAL SAFETY    )
GROUP, LTD., ANGUS FIRE ARMOUR  )
CORPORATION, BUCKEYE FIRE    )
EQUIPMENT COMPANY,    )
DYNEON LLC, ARKEMA, INC.,    )
ARKEMA FRANCE, S.A., SOLVAY    )
SPECIALTY POLYMERS USA, LLC,    )
UNITED TECHNOLOGIES    )
CORPORATION, CHUBB FIRE, LTD.,  )
MUNICIPAL EMERGENCY SERVICES,  )
INC., WARREN FIRE EQUIPMENT, INC.,)
LAWMEN SUPPLY COMPANY,    )
and JOHN DOE DEFENDANTS 1-49    )
                        )
       Defendants.        )

## COMPLAINT

Plaintiff, the Sanford Airport Authority ("Plaintiff"), by and through its undersigned

counsel, brings this action against Defendants, 3M Company, E. I. DuPont De Nemours and

Company, The Chemours Company LLC, DowDuPont Inc., DuPont Chemical Solutions Enterprise, The Chemours Company FC LLC, Chemguard, Inc., Tyco Fire Products LP, The Ansul Company, Johnson Controls International, plc, Kidde-Fenwal, Inc., Kidde PLC, Inc., Kidde Fire Fighting, Inc., UTC Fire & Security Americas Corporation, Inc., National Foam, Inc., Angus International Safety Group, Ltd., Angus Fire Armour Corporation, Buckeye Fire Equipment Company, Dyneon, LLC, Arkema, Inc., Arkema France, S.A., Solvay Specialty Polymers USA, LLC, United Technologies Corporation, Chubb Fire, Ltd., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, and monitoring of the ongoing contamination of its surface, groundwater, soil, and sediment caused and/or created by Defendants' products, as well as any and all punitive damages available as a result of the actions and/or inactions of Defendants.

2.    Plaintiff is the owner and operator of the Orlando Sanford International Airport (the "Airport").  The Airport previously functioned as a naval air station.

3.    The Airport is partially constructed on land leased from the City of Sanford, which has assigned to Plaintiff its rights to bring suit against Defendants for the actions described herein. The Airport and the land upon which the Airport is constructed and operates are collectively referred to herein as the "Property".

4.    At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires.

5.      Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or perfluorononanoic acid ("PFNA") and/or perfluorohexanesulfonic acid ("PFHxS"), and/or precursors of PFAS, PFOA, PFOS, PFNA, and/or PFHxS.

6.      PFOA, PFOS, PFNA, and/or PFHxS are man-made, manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

7.      Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

8.      At all times pertinent herein beginning decades ago and, upon information and belief, continuing to this date, AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used and stored at the Airport for fire protection, training, and response activities at the Airport. During these activities, AFFF was used as directed and intended by Defendants, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter the environment. When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating the Property.

9.      Upon information and belief, there are multiple areas on the Property, including land, water, and structures, that have been contaminated with PFOA, PFOS, PFNA, and/or PFHxS through the use of AFFF.

10.     The Property has been, and continues to be, contaminated by Defendants' PFOA, PFOS, PFNA, and/or PFHxS.

11.     At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of its Property through the use of AFFF as Defendants did not disclose the toxic nature and harmful effects of the AFFF which Defendants designed, manufactured and sold with PFOA, PFOS, PFNA, and/or PFHxS.

12.     Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor PFOA, PFOS, PFNA, and/or PFHxS contamination on Plaintiff's Property and groundwater caused by the use of Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS on the Property, as well as any and all punitive damages recoverable under applicable law.

13.     Plaintiff also seeks damages and restitution for the diminution of value of the Property, as well as reasonable attorneys' fees and costs.

## II.    PARTIES

14.     Plaintiff is an independent governing body, existing under the laws of the State of Florida, with its principal address at 1200 Red Cleveland Blvd., Sanford, Florida 32773. Plaintiff has overall administrative, development and operational responsibility for the Airport.

15.     Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware and authorized to conduct business in Florida, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used to fight fires at numerous military bases, airports, and other locations throughout the country.

16.     Defendant E. I. DuPont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in

Florida, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

17.    Defendant The Chemours Company LLC ("Chemours") is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in Florida, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

18.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

19.    Defendant DowDuPont Inc. ("DowDuPont") is a Delaware corporation and authorized to do business in Florida, with its principal places of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDuPont is the resulting parent entity from the merger of Dow Chemical Company and DuPont that became effective August 31, 2017. DowDuPont is the parent of DuPont and, upon information and belief, is liable for damages set forth herein.

20.    DuPont Chemical Solutions Enterprise ("DuPont Chemical") is a Delaware Corporation, with a principal place of business located at 1007 Market Street Wilmington, Delaware 19898.

21.    Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation and authorized to

do business in Florida, with its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

22.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin and authorized to do business in Florida, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold to Plaintiff AFFF that contained PFOA.

23.     Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware and authorized to do business in Florida, with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

24.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFAS.

25.     Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

26.     Defendant Johnson Controls International, plc ("Johnson Control") is a Wisconsin corporation having a principal place of business at 5757 N. Green Bay Avenue, Milwaukee, Wisconsin 53209. Johnson Controls, Inc., through mergers and/or acquisitions, is responsible for AFFF sold under the names Ansul Company, Chemguard and/or Tyco Fire Products.

27.     Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware and authorized to do business in Florida, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

28.     Defendant Kidde PLC, Inc. ("Kidde PLC") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

29.     Defendant Kidde Fire Fighting, Inc. ("Kidde Fire") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, Massachusetts 01721. Upon information and belief, Kidde Fire was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

30.     Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and authorized to do business in Florida, with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.

31.     Defendant Angus International Safety Group, Ltd. ("Angus International") is a foreign private limited company, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. Upon information and belief, Angus International is registered in the United Kingdom with a registered number of 8441763.

32.     Defendant Angus Fire Armour Corporation ("Angus Fire" and, together with Angus International, "Angus") is a Delaware corporation, with its principal offices at 141 Junny

Road, Angier, North Carolina 27501. Upon information and belief, Angus International is the corporate parent of National Foam and Angus Fire.

33.     Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus (collectively, "National Foam/Angus"). National Foam/Angus does and/or has done business throughout the United States, including conducting business in Florida. These Defendants manufactured and sold AFFF that contained PFOA.

34.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

35.     Defendant Dyneon, LLC ("Dyneon") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6744 33rd Street N, Oakdale, Minnesota 55128. Dyneon is a subsidiary of 3M.

36.     Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania and authorized to do business in Florida, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Defendant Arkema France, S.A.

37.     Defendant Arkema France, S.A. is a publicly traded foreign corporation having its principal place of business in Colombes, France. Arkema France, S.A. is the parent corporation of Defendant Arkema, Inc. Arkema France, S.A. and Arkema, Inc. are collectively referred to herein as "Arkema."

38.    Defendant Solvay Specialty Polymers USA, LLC ("Solvay"), is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in Florida, with its principal place of business at 4500 McGinnis Ferry Road, Alpharetta, Georgia 30005.

39.    Defendant United Technologies Corporation ("United Technologies") is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in Florida, with its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

40.    Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

41.    Upon information and belief, UTC, Kidde-Fenwal, Kidde PLC, and Kidde Fire are current or former subsidiaries of United Technologies (together, the "UTC Entities").

42.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc., some of which are authorized to do business in Florida.

43.    Defendant Municipal Emergency Services, Inc. ("MES") is a corporation organized and existing under the laws of the State of Nevada and authorized to do business in Florida, with its principal place of business at75 Glen Road, Ste. 207, Sandy Hook, Connecticut 06482.

44.    Defendant Warren Fire Equipment, Inc. ("Warren") is a subsidiary of MES. It is a corporation organized and existing under the laws of the State of Ohio, is headquartered at 6880 Tod Ave SW, Warren, OH 44481, and doing business in Florida.

45.    Defendant Lawmen Supply Company is ("Lawmen") is a subsidiary of MES. It is a corporation organized and existing under the laws of the State of New Jersey and doing business in Florida.

46.    Defendants MES, Warren, and Lawmen distributed and sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS to Plaintiff.

47.    Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of AFFF. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as additional defendants.

48.    The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS who, upon information and belief, manufactured, distributed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS that was used on the Property.

49.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or

properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.   JURISDICTION AND VENUE

50.   This Court has subject matter jurisdiction over this action because this is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00).

51.   Venue is appropriate in this Court pursuant to Section 47.011, Florida Statutes, as a substantial part of the events and omissions giving rise to Plaintiff's causes of action accrued in Seminole County, and because the Property affected by Defendants' actions is located in Seminole County.

52.   All conditions precedent to bringing this action have occurred, have been waived, or otherwise have been performed.

53.   By reason of the conduct by Defendant, described herein, Plaintiff has retained the law firm of Shutts & Bowen LLP to seek recovery of the damages it has incurred and to institute and prosecute this action.  For such employment, Plaintiff has agreed to pay its counsel their reasonable fees and costs, and seeks recovery therefor to the extent authorized by applicable law or agreement.

### IV.   FACTUAL ALLEGATIONS

### A.   THE CONTAMINANTS: PFOA, PFOS, PFNA, AND/OR PFHXS

54.   PFOA, PFOS, PFNA, and/or PFHxS are chemicals within a class known as perfluoroalkyl acids ("PFAAs"). PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached

to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is why these molecules are so persistent and bioaccumulate.

55.    PFOA, PFOS, PFNA, and/or PFHxS are highly water soluble, readily transported through the air as well as the soil and groundwater, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

56.    PFOA, PFOS, PFNA, and/or PFHxS are thermally, chemically, and biologically stable in the environment and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis. They are difficult and costly to remove from soil and water.

57.    PFOA, PFOS, PFNA, and/or PFHxS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

58.    PFOA, PFOS, PFNA, and/or PFHxS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

59.    Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA, PFOS, PFNA, and/or PFHxS.

---

[1]    *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfas/PFAS-health-effects.html

[2]    *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

60.     According to the EPA, "...studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

61.     The EPA has also warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

62.     PFOA, PFOS, PFNA, and/or PFHxS are found in a number of variety of products and uses prevalent throughout our society.

63.     The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[5]

64.     PFOA, PFOS, PFNA, and/or PFHxS are primary components of AFFF as used for its intended purposes on Plaintiff's Property.

---

[3]   *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[4]   *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[5]   *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

### B.    THE PRODUCT: AQUEOUS FILM-FORMING FOAM

65.    AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

66.    The Federal Aviation Administration (FAA) has required and currently requires the Airport to use AFFF as part of its emergency response to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires.    The FAA further requires testing and training concerning the use of AFFF in emergency situations.

67.    The AFFF made by Defendants contained PFOA, PFOS, PFNA, and/or PFHxS.

68.    The AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

69.    AFFF can be made without PFOA, PFOS, PFNA, and/or PFHxS. Fluorine-free foams do not release PFOA, PFOS, PFNA, and/or PFHxS into the environment. Despite knowledge of this fact, as well as knowledge of the toxic nature of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants continued to manufacture, distribute and/or sell AFFF with PFOA, PFOS, PFNA, and/or PFHxS, which led to the ongoing contamination and damages to the Property.

70.    AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

71.    The Plaintiff utilized the product as intended and directed and maintained appropriate safeguards as to their personnel while treating any emergency at the Airport, participating in any training or performing any FAA Part 139 testing at the Airport.

72.    Despite the Plaintiff's best efforts, when used as the Defendants intended and directed, the AFFF sold to and utilized at the Airport released PFOA, PFOS, PFNA, and/or PFHxS into the environment.

73.    Once PFOA, PFOS, PFNA, and/or PFHxS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

74.    Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used for its intended purpose, with appropriate known safeguards, in the process of fire protection, training, and response activities at the Airport for many years. During these activities, AFFF was used as directed and intended by the manufacturer, with all known safeguards, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter into and onto the Property where, upon information and belief, these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface, soil, sediment and groundwater, as well as causing other extensive and ongoing damages at the Airport.

75.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to the Property.

**C.    DEFENDANT'S HISTORY OF MANUFACTURING AND SELLING AFFF**

76.    3M began to produce PFAS by electrochemical fluorination in the 1940s.

77.    In the 1960s, 3M used its fluorination process to develop AFFF.

78.    3M manufactured, marketed, and sold AFFF and the raw materials for production of AFFF from the 1960s to the early 2000s, including through its subsidiary, Dyneon.

79.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

80.    On information and belief, the UTC Entities began to manufacture, market, and sell AFFF in the 1990s.

81.    Angus and Chemguard began to manufacture, market, and sell AFFF in the 1990s.

82.    Upon information and belief, throughout the 1990s, Chubb, through its association with National Foam, obtained patents under the name Chubb National Form, Inc. for AFFF and similar firefighting foams, including Patent No. 5207932, dated May 4, 1993, for alcohol resistant AFFF.

83.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

84.    Beginning in 1951, DuPont began purchasing PFOA from 3M for use in the manufacturing process for its name-brand product Teflon®, commonly known for its use as a coating for non-stick cookware.

85.    DuPont has also used PFAS in other name-brand products such as Stainmaster®.

86.    Upon information and belief, at all times relevant, DuPont Chemical designed, manufactured, and sold AFFF and/or the PFAS constituents in AFFF, that was used in training operations and for emergency fire-fighting situations including at the Property.

87.    Arkema is a chemicals manufacturer that has manufactured PFAS.

88.    In 2000, 3M announced it would phase out and find substitutes for its PFOS chemistry.

89.    In 2001, DuPont became a founding member of the Fire Fighting Foam Coalition ("FFFC").

90.    In part, through its involvement in the FFFC, DuPont actively marketed its fluorosurfactants to AFFF manufacturers for use in the production of AFFF.

91.    On information and belief, Solvay began using PFNA in 1990 or earlier and even admitted using PFOA prior to 2010.[6]

92.    Some or all of the AFFF manufactured and sold by Defendants contained fluorosurfactants manufactured and sold by DuPont.

93.    In response to pressure from the United States Environmental Protection Agency ("EPA"), 3M began to phase out production of PFAS products in 2000.

94.    On May 16, 2000, 3M issued a news release asserting that "our products are safe," citing the company's "principles of responsible environmental management" as the reason to cease production.[7]

95.    In addition, EPA issued a press release stating: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."

96.    In a memo explaining its decision, the EPA stated that PFOS "appears to combine Persistence, Bioaccumulation, and Toxicity property to an extraordinary degree."

97.    After 3M exited the AFFF market, the remaining Defendants continued to manufacture and sell AFFF.

98.    The Defendants knew their customers warehoused large stockpiles of AFFF and touted the shelf-life of AFFF.

99.    While Defendants phased out production or transitioned to new formulas of AFFF, they did not instruct users of AFFF that they should not use AFFF that contained PFOS, PFOA, PFNA and/or PFHxS, and/or their precursors.

---

[6] See https://www.regulations.gov/docket?D=EPA-HQ-OPPT-2006-0621

[7] https://www.csrwire.com/press_releases/25065-3M-Phasing-Out-Some-of-its-Specialty-Materials

100.    Defendants further did not act to remove AFFF from the stream of commerce.

101.    Defendants did not warn public entities or others that AFFF would harm the environment, endanger human health, or cause them to incur substantial costs to investigate and clean up contamination of groundwater and other natural resources and to dispose of AFFF.

102.    Accordingly, for many years after the original sale of AFFF, Plaintiff was using the AFFF products over the years, with appropriate safeguards, in various fire-fighting methods, which resulted in AFFF products being discharged into floor drains and washed into sediments, soils and waters, harming the environment and endangering human health.

103.    Defendants did not properly instruct users, consumers, public officials or those who were in a position to properly guard against the dangers of PFAS how to properly dispose of AFFF or that they needed to properly dispose of their stockpiles of AFFF.

**D.    DEFENDANTS' KNOWLEDGE OF PFAS HAZARDS**

104.    On information and belief, by the 1950s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOS, PFOA, PFNA and/or PFHxS are toxic and bioaccumulate in humans and animals; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOS, PFOA, PFNA and/or PFHxS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

105.    At all times pertinent herein, Defendants also knew or should have known that PFOS, PFOA, PFNA and/or PFHxS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS, PFOA, PFNA and/or PFHxS are known carcinogens that cause genetic damage.

106.   For example, based upon information and belief, 3M knew as early as 1960 that chemical wastes from its PFAS manufacturing facilities that were dumped to landfills could leach into groundwater and otherwise enter the environment. An internal memo from 1960 described 3M's understanding that such wastes "[would] eventually reach the water table and pollute domestic wells."

107.   3M began monitoring the blood of its employees for PFAS, as early as 1976, because 3M was concerned about health effects of PFAS.

108.   In 1978, based on information it received from 3M about elevated and persistent fluorine levels in workers exposed to PFOA, DuPont initiated a plan to review and monitor the health conditions of potentially exposed workers in order to assess whether any negative health effects could be attributed to PFOA exposure.

109.   This monitoring plan involved obtaining blood samples from the workers and analyzing them for the presence of fluorine.

110.   By 1979, DuPont had data indicating that its workers exposed to PFOA had a significantly higher incidence of health issues than did unexposed workers.

111.   DuPont did not report this data or the results of its worker health analysis to any government agency or community.

112.   The following year, DuPont internally confirmed that PFOA "is toxic," that humans accumulate PFOA in their tissue, and that "continued exposure is not tolerable."

113.   In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a

person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[8]

114.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

115.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

116.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned, "we must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

117.    A 2015 report Solvay submitted to the Environmental Protection Agency showed that more than 100 water samples around its plant contained PFNA.

118.    Notwithstanding their respective knowledge of the dangers of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants negligently and carelessly: (1) designed,

---

[8]    *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[9]    *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[10]    *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

manufactured, marketed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA, PFOS, PFNA, and/or PFHxS to contaminate the soil and groundwater in and around the Airport; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA, PFOS, PFNA, and/or PFHxS.

119.    As a direct result of Defendants' acts alleged in this Complaint, upon information and belief, the Property has been contaminated and will continue to be contaminated with PFOA, PFOS, PFNA, and/or PFHxS, creating an environmental and public health hazard, unless such contamination is remediated. Thankfully the Airport generally has a stable water table and it is highly unlikely PFOA, PFOS, PFNA, and/or PFHxS may have migrated from the Property. Regardless, as a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA, PFOS, PFNA, and/or PFHxS contamination on its Property at significant expense, loss and damage.

120.    Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had and breached their duty to minimize the environmental harm caused by PFOA, PFOS, PFNA, and/or PFHxS. Moreover, defendants failed to warn Plaintiff of the known risks for

environmental and health hazards arising from using AFFF with PFOA, PFOS, PFNA, and/or PFHxS in its intended manner for its intended purpose.

### E.    THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY

121.    Since November 3, 1942 the Property has been used as an Airport.  At first it was a United States military base during World War II, the Korean and Vietnam Wars, where training flights and training of aircraft operators would occur.  After the Vietnam War, the Airport was converted to a general aviation facility and deeded to the City of Sanford, Florida. The Sanford Airport Authority took over and operated the Airport since its inception until today.

122.    During the nearly eighty years of operation, there have been multiple incidents at the Airport whereby the need for emergency response and use of AFFF has been necessary. Further, certain testing has been performed at the Airport by both the FAA and the state.

123.    Upon information and belief, PFOA, PFOS, PFNA, and/or PFHxS are present in certain areas of the Airport. Any detectible level of PFOA, PFOS, PFNA, and/or PFHxS in the Property's soil, surface water, groundwater, well water, or elsewhere on its property requires further investigation, monitoring and ultimately remediation. The threat of detection and/or presence of PFOA, PFOS, PFNA, and/or PFHxS, at the Property has resulted, and will continue to result, in significant damage to Plaintiff.

124.    Upon information and belief, the invasion of Plaintiff's Property with PFOA, PFOS, PFNA, and/or PFHxS continues – contamination flows continues on the Airport and PFOA, PFOS, PFNA, and/or PFHxS continue to migrate deeper into the Property, resulting in new harm to the Property and Plaintiff on each occasion.

125.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Property. Plaintiff's interests in protecting its Property

constitute a reason for seeking damages sufficient to restore such property to its pre-contamination condition.

## FIRST CAUSE OF ACTION

### STRICT LIABLITY – DEFECTIVE DESIGN

126. Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

127. Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling products containing PFOA, PFOS, PFNA, and/or PFHxS.

128. Defendants marketed and sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS for use in controlling and extinguishing aviation, marine, fuel and other flammable liquid fuel fires.

129. Defendants represented, asserted, claimed, and warranted that their AFFF products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

130. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

131. The AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

132. Defendants knew, or should have known, that use of AFFF in its intended manner or in a manner reasonably foreseeable by Defendants would result in the spillage, discharge,

disposal, or release of PFOA, PFOS, PFNA, and/or PFHxS into or onto land with associated migration to groundwater.

133.    The AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Property was defective in design and unreasonably dangerous because, among other things: (a) PFOA, PFOS, PFNA, and/or PFHxS cause soil and groundwater contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOA, PFOS, PFNA, and/or PFHxS render drinking water unfit for consumption; (c) PFOA and PFOS pose significant threats to public health; and (d) PFOA, PFOS, PFNA, and/or PFHxS create real and potential damage to the environment. Therefore, the AFFF failed to perform as safely as an ordinary consumer would expect and/or the risk of danger in the design outweighed its benefits.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

### STRICT LIABLITY – FAILURE TO WARN

134.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

135.    As manufacturers, distributors, suppliers, sellers, and marketers of products containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA, PFOS, PFNA, and/or PFHxS.

136.    Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA, PFOS, PFNA, and/or PFHxS pose to human health and the environment.

137.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, downstream handlers, and/or the general public with warnings about

the potential and/or actual contamination of the environment by PFOA, PFOS, PFNA, and/or PFHxS, despite Defendants' knowledge that PFOA, PFOS, PFNA, and/or PFHxS were real and potential threats to the environment. Therefore, Defendants failed to adequate warn of a risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

138. AFFF containing PFOA, PFOS, PFNA, and/or PFHxS purchased or otherwise acquired from Defendants was used, discharged, and/or released into or onto the Property.

139. AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was used in a reasonably foreseeable manner and without substantial change in the condition in which the product was sold.

140. AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Property was defective in design and unreasonably dangerous for the reasons set forth above.

141. Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of PFOA, PFOS, PFNA, and/or PFHxS on the Property, including contamination of the Property and groundwater with PFOA, PFOS, PFNA, and/or PFHxS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

142. In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA, PFOS, PFNA, and/or PFHxS.

143. As a direct and proximate result of Defendants' above-described failure to give warnings, PFOA, PFOS, PFNA, and/or PFHxS have: (a) posed and continue to pose a threat to the Property; (b) upon information and belief, contaminated and continue to contaminate

Plaintiff's Property; (c) required and/or will continue to require the investigation and monitoring of the soil and groundwater for PFOA, PFOS, PFNA, and/or PFHxS contamination; and (d) will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable, removal and disposal of the contaminated property.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## THIRD CAUSE OF ACTION

STRICT LIABILITY – DAMAGES UNDER CHAPTER 376, FLORIDA STATUTES

144.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

145.    Defendants' acts and omissions set forth above caused a prohibited discharge of the pollutants or hazardous substances PFOA, PFOS, PFNA, and/or PFHxS onto the Property.

146.    The contamination created by Defendants' actions requires clean up and/or removal of the PFOA, PFOS, PFNA, and/or PFHxS from the Property.

147.    Plaintiff has been damaged as a direct and proximate result of the acts and omissions of Defendants as set forth above.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## FOURTH CAUSE OF ACTION

TRESPASS

148.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

149.    Plaintiff is the owner and/or actual possessor and/or assignee of rights of the Property and the ground water and other relevant structures located thereon. Defendants knew, or

in the exercise of reasonable care should have known, that PFOA, PFOS, PFNA, and/or PFHxS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

150.    Defendants failed to properly warn against the use of AFFF such that they proximately caused and continue to cause PFOA, PFOS, PFNA, and/or PFHxS to contaminate the Property, including but not limited to its soil, surface, groundwater, and other structures located thereon.

151.    Upon information and belief, the contamination of the Property has varied over time and has not yet ceased. PFOA, PFOS, PFNA, and/or PFHxS continue to migrate into and enter the Property.

152.    Plaintiff has not consented to, and does not consent to, this contamination.

153.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass, and that they had no right or authority to carry out this trespass.

154.    As a direct and proximate result of the trespass, the Property has been damaged and Plaintiff is entitled to abate the trespass and other damages including, but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the Property to its original condition, investigation, remediation, treatment, and/or to such other appropriate relief.

### FIFTH CAUSE OF ACTION

NEGLIGENCE

155.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

156.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of PFOA, PFOS, PFNA, and/or PFHxS products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' products might foreseeably harm, to

exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of PFOA, PFOS, PFNA, and/or PFHxS products.

157.    Despite the fact that Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS are toxic, can contaminate soil and water resources, and present significant risks to human health, Defendants negligently breached their duty of care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold products containing PFOA, PFOS, PFNA, and/or PFHxS; (b) issued instructions on how AFFF containing PFOA, PFOS, PFNA, and/or PFHxS should be used and disposed of, thus improperly permitting PFOA, PFOS, PFNA, and/or PFHxS to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS of the dangers of soil and groundwater contamination as a result of standard use and disposal of this product; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF.

158.    As a direct and proximate result of Defendants' acts and omissions as set forth above, the Property has been, and continues to be, contaminated with PFOA, PFOS, PFNA, and/or PFHxS, causing Plaintiff significant injury and damage. Furthermore, as a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur significant costs and damages resulting from and associated with the contamination of the Airport by Defendants' AFFF made with PFOA, PFOS, PFNA, and/or PFHxS.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SIXTH CAUSE OF ACTION

### CIVIL CONSPIRACY

159.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

160.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including the Property.

161.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA, PFOS, PFNA, and/or PFHxS to the public and the government, with the true, unlawful purpose of:

    a.    intentionally misrepresenting to the EPA and the public that AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was safe and did not pose a risk to human health and the environment;

    b.    concealing the dangers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA, PFOS, PFNA, and/or PFHxS were being disposed of;

    c.    concealing the dangers of PFOA, PFOS, PFNA, and/or PFHxS from consumers and the public; and

    d.    using their considerable resources to fight legislation concerning PFOA, PFOS, PFNA, and/or PFHxS.

162.    As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

a.    posed and continue to pose a threat to the Property;

b.    contaminated and/or will continue to contaminate the Property;

c.    contaminated and/or will continue to contaminate the soil, surface and groundwater on and within the vicinity of the Property;

d.    required or will require testing and monitoring of the Property for PFOA, PFOS, PFNA, and/or PFHxS contamination;

e.    required or will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

f.    diminished Plaintiff's confidence in, and the use and enjoyment of, the Property;

g.    diminished the Property's value due to actual, impending, and/or threatened PFOA, PFOS, PFNA, and/or PFHxS contamination; and

h.    caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its Property.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

### SEVENTH CAUSE OF ACTION

FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)
§ 726.101, Fla. Stat. *et seq.*

163.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

164.    Plaintiff seeks equitable and other relief pursuant to the Florida Uniform Fraudulent Transfer Act, section 726.101, Florida Statutes *et seq.*, against DuPont.

165.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

166.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

167.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

168.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

169.    Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud creditors or parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business;

or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

170.     Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, which assets could have been applicable to the payment of damages and debts due to creditors and parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

171.     Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

172.     Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severaly liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

173.     Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## **EIGHTH CAUSE OF ACTION**

### PUBLIC NUISANCE

174.     Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

175.     Defendants manufactured, distributed, marketed, and/or promoted their products containing PFOA, PFOS, PFNA, and/or PFHxS in a manner that created, or participated in

creating, a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience, damage, and annoyance.

176.    Defendants, by their acts and omissions set forth above, have, among other things, knowingly unleashed long-lasting and still spreading PFOA, PFOS, PFNA, and/or PFHxS contamination and threat of contamination to the environment and the Property.

177.    Actual and threatened PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

178.    Defendants' conduct has also injured, and continues to injure, the Property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Sanford, Florida, who utilize and/or work at the Airport.

179.    PFOA, PFOS, PFNA, and/or PFHxS contamination constitute current, as well as prospective, public nuisances.

180.    Plaintiff suffered a special or particular injury different in degree and in kind from the injury or damages suffered by the public.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## NINTH CAUSE OF ACTION

### PRIVATE NUISANCE

181.    Plaintiff realleges and reaffirms all allegations set forth in paragraphs 1 through 125 above.

182.    Upon information and belief, the Property has been contaminated by PFOA, PFOS, PFNA, and/or PFHxS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

33

183.    Upon information and belief, PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has damaged Plaintiff's Property and interfered with the free use, possession, or enjoyment of Plaintiff's Property, and rendered its ordinary use or occupation physically uncomfortable.

184.    Defendants' conduct has interfered and continues to interfere with Plaintiff's property rights, comfort, and/or safety.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages, including, but not limited to:

    a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA, PFOS, PFNA, and/or PFHxS contamination on and within the Property;

    b.    costs and expenses related to the past, present, and future treatment and remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination of the Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

    c.    costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA, PFOS, PFNA, and/or PFHxS on and within Plaintiff's Property, or to mitigate further impact.

2.    Consequential damages;

3.    Costs, disbursements and attorneys' fees of this lawsuit;

34

4.    Pre-judgment and post-judgment interest; and

5.    Any other and further relief as the Court deems just, proper, and equitable.

6.    Plaintiff reserves the right to amend the Complaint to demand punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: November 19, 2019

Respectfully submitted,

**SHUTTS & BOWEN LLP**

*/s/ Kenneth W. Wright*
KENNETH W. WRIGHT
Florida Bar No.: 0188759
Primary E-mail: kwright@shutts.com
Secondary E-mail: PHarris@shutts.com
BRETT R. RENTON
Florida Bar No.: 41994
Primary E-mail: brenton@shutts.com
Secondary E-mail: tmartin@shutts.com
300 South Orange Ave., Suite 1000
Orlando, Florida 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316

and

ERIK R. MATHENEY
Florida Bar No. 005411
Primary E-mail: ematheney@shutts.com
Secondary E-mail: kallen@shutts.com
ELLA A. SHENHAV
Florida Bar No. 81996
Primary E-mail: eshenhav@shutts.com
Secondary E-mail: fpadilla@shutts.com
4301 W. Boy Scout Blvd., Suite 300
Tampa, Florida 33607
Telephone: (813) 229-8900
Facsimile: (813) 229-8901

35